**WARING PRODUCTS CORPORATION**

v.

**LANDERS, FRARY & CLARK.**

Civ. A. No. 4838.

United States District Court
D. Connecticut.

Nov. 19, 1957.

John C. Blair, Stamford, Conn., for plaintiff.

T. Clay Lindsey, Hartford, Conn., for defendant.

**J. JOSEPH SMITH, Chief Judge.**

### Findings of Fact

1. Plaintiff is a Delaware corporation having a principal place of business at 25 West 43rd Street, New York, New York.

2. Defendant is a Connecticut corporation having its principal place of business at 147 Center Street, New Britain, Connecticut.

3. Title to U. S. Letters Patent No. 2,109,501 dated March 1, 1938, issued to F. J. Osius for "Disintegrating Mixer for Producing Fluent Substance" is in the plaintiff.

4. The Osius patent discloses an electrically operated machine for disintegrating solid materials and blending them with other solids or fluids to form an emulsion or blend. The blending machine described in the Osius patent includes:

(a) A base having an electric motor therein, the shaft of the motor extending vertically upwardly from the base.

(b) A series of four prongs upstanding from the base to receive a receptacle and prevent it from rotating during operation.

(c) A receptacle having a rotor mounted therein near its bottom portion, the blades of the rotor being in close proximity to the lower side walls of the receptacle. The shaft on which the rotor is mounted extends through the base of the receptacle and is adapted to engage the shaft of the motor when the receptacle is placed on the base.

(d) The rotor is so shaped and located in the receptacle that when rotated by the motor it will cause vertical as well as horizontal circulation of the material in the receptacle, i. e. upward spiralling.

(e) The blades of the rotor are sharpened so that when rotated at high speed they will chop up or disintegrate solids which are placed in the receptacle.

(f) The side walls of the receptacle are lobed, i. e. in cross section the side walls comprise several symmetrically arrayed arcuate surfaces. This construction produces substantially increased turbulence over that possible if the container were merely circular, and this substantially increased turbulence great-

ly enhances the blending action obtained with the apparatus.

5. The operation of the Osius apparatus as disclosed in the Osius patent is as follows: The rapid rotation of the blades by the motor causes the material to be blended to move rapidly downwardly, outwardly, then upwardly and outwardly in spirals, throwing the contents radially against the curved inner faces of the lobes which, in turn, serve to deflect this material inwardly in substantial tangency to a central vortex through which the material returns rapidly downwardly to the cutting and impelling unit for retreatment thereby. Due to the deflecting action of the lobular side walls, this vortex is materially exaggerated and extends to the disintegrating mechanism with the result that it delivers all the materials in such fashion that they pass directly through the whirling blades of the unit for treatment thereby; air is also drawn into the vortex and with accompanying agitation is injected into the mass.

6. The description of the Osius invention in the Osius patent is in such full, clear, concise, and exact terms as to enable a person skilled in the art of making household appliances such as mixers and blenders to construct a blending machine embodying the Osius invention.

7. Plaintiff and its predecessors have manufactured since 1938 a device which is made in accordance with the teachings of the Osius patent and operates in the manner previously described in Findings 4 and 5. This device is known as a "Waring Blendor".

8. "Waring Blendors" made according to the Osius patent perform an effective and high-speed blending of solid foods and fluid substances to produce useful blends of these materials. The apparatus is very useful in making many household foods hitherto unknown, many blends useful in medical diets and the blending of industrial substances, particularly in research and scientific studies.

9. Apparatus made according to the Osius patent has found extensive use in hospitals for preparation of special diets and in scientific applications for many important things, i. e. the manufacture of Salk poliomyelitis vaccine and the determination of free fatty acid in the analysis of copra.

10. The wide diversity of uses and applications for the "Blendor" indicates its great utility in a variety of applications for the preparation of many products heretofore impossible of achievement or only possible at great expense and inconvenience.

11. The "Waring Blendor" has enjoyed substantial commercial success. Approximately one million of these devices were sold in the period beginning in 1938 and ending in 1954. Many hundreds of thousands have been sold since then.

12. Waring Products has paid over $300,000 during the period mentioned in Finding 11 to the inventor and his estate for rights under the Osius patent in suit.

13. Defendant produces and sells and has produced and sold since January, 1954, a device which it markets under the name: "Universal Mixablend".

14. The "Mixablend" includes the following parts:

(a) A base having a motor mounted therein, the motor shaft being vertical and extending vertically upwardly from the base.

(b) Means comprising four bumps on the top of the base to receive a receptacle and to prevent it from rotating during operation.

(c) A receptacle having a rotor therein near its bottom portion, the blades of the rotor being in close proximity to the lower side walls of the receptacle. The shaft on which the rotor is mounted extends through the base of the receptacle and is adapted to engage the shaft of the motor when the receptacle is placed on the base.

(d) The rotor is so shaped and located in the receptacle that when rotated by the motor it will cause horizontal and vertical circulation of the material in the receptacle, i. e. upward spiralling.

(e) The blades of the rotor are sharpened so that when rotated at high speed they will chop or disintegrate solids which are placed in the receptacle.

(f) The side walls of the receptacle are lobed, i. e. in cross section the side walls comprise several symmetrically arranged arcuate surfaces separated by flat surfaces. This construction produces the same substantially increased turbulence as described in connection with the Osius patent (Finding 4(f)).

(g) The lobular portions of the receptacle are connected by the flat portions joining them.

(h) While the circles which define the lobes in the "Mixablend" are not overlapping, they are symmetrically arranged about the axis of the container and are in very close proximity to each other to achieve the identical result of the Osius machine.

15. The "Mixablend" operates in the same manner as plaintiff's "Waring Blendor", and both the "Mixablend" and the "Blendor" are substantially similar in construction to achieve an identical result

16. The defendant's construction infringes Claim 3 of the Osius patent. It is a drink mixer having a container or receptacle which has a small number, i. e. four, of smooth arcuate, substantially semi-circular, upright lobes to define side walls. The receptacle also has a rotor having distintegrating blades, the rotor being located near the lower portion of the side walls. The "Mixablend" also includes means for rotating the rotor in a direction to produce an upwardly and outwardly spiralling movement of the fluid contents of the container, the lobes acting on the contents to produce an exaggerated vortex having its apex in close proximity to the cutting blades.

17. Claims 9 and 10 are infringed by the "Mixablend" construction; the circles defining the arcs forming the lobes in the "Mixablend" construction do not overlap but come so close that the identical result is achieved.

18. A mixer is a device which will intermingle two liquid materials or a liquid and a soft solid or two soft solid materials such as fat and butter and finely divided dry materials such as sugar and flour. Mixers have only a very limited cutting action. Blending devices will accomplish any task that a mixing device will accomplish but additionally will finely divide large pieces of cooked or uncooked vegetables, fruits, meats, and other foods until they are so finely divided that they can be held in suspension.

19. Prior to the disclosure of the Osius blending machine, there was no known device which would disintegrate and blend solids and liquids to form an intimate mixture or blend of the finely divided solids, the liquid, and entrained air, i. e. to blend solids and liquids and gases such as air to form a blend.

20. The method of creating blends of solids and liquids prior to the Osius invention consisted in disintegrating the solid material with a colloid mill, orifice plate, or the like. This finely divided material was then placed in a container with the fluid and mixed by hand or with an electric mixer. The resulting product was inferior to that obtained with the Waring "Blendor", since the emulsification was not complete and in many cases it was impossible to finely divide the solid material.

21. None of the patents in suit disclose the combination of:

(a) A container having lobed side walls.

(b) An impeller designed to provide both horizontal and vertical circulation located in the bottom of the receptacle with its blades in close proximity to the side walls thereof.

(c) The blades of the rotor having disintegrating surfaces to cause disintegration of solid substances in the fluid being blended.

22. It was not an obvious step to combine these features in a blending machine considering the prior art cited during the prosecution of the patent and the art cited by the defendant. Accordingly, the Osius concept is inventive because it was not obvious to those skilled in this art.

23. The combination of elements which produces the blending action described in the Osius patent produces a result which is different from and superior to that produced by prior mixing machines.

24. Claim 3 of the Osius patent in suit reads as follows: "In a drink mixer a receptacle having inner side walls comprising a small number of smoothly arcuate substantially semi-circular edge-connected upright lobes a rotor having disintegrating blades movable in close proximity to the lower portion of said walls and means for revolving said blades about the axis of said receptacle in a direction such as to produce an upwardly and outwardly spiralling movement of the contents of the container, whereby the action of said lobes on the contents produces an exaggerated vortex having its apex in close proximity to said cutting blades." This claim defines the Osius invention over the prior art, since it includes:

(a) Smoothly arcuate edge-connected upright lobes in the container.

(b) A rotor having disintegrating blades.

(c) Blades located in close proximity to the lower portion of the side walls.

(d) Means for revolving the blades to produce

(1) an upwardly and outwardly spiralling movement of the contents of the container, and

(2) a sudden descent of the contents to the disintegrating blades.

25. Claim 9 defines the invention as follows: "In a drink mixer, a receptacle having therein a liquid confining space bounded by an annular series of smoothly arcuate lobes, the lobes being each defined in all horizontal planes by arcs of overlapping circles which are symmetrically arranged around a central axis and each of which circles passes closely adjacent such axis, a disintegrating and fluid propelling rotor disposed within the lower portion of said receptacle at the lower end of said space and rotatable about said axis, and means extending through the bottom of the receptacle whereby said rotor may be connected with a driving motor.

(a) It defines over the prior art because:

(1) The container is bounded by smoothly arcuate lobes.

(2) The lobes are defined by the arcs of overlapping circles.

(3) It has a disintegrating rotor.

(4) The rotor is driven from the bottom of the receptacle.

(b) Claim 9 defines the invention adequately over the prior art.

26. Claim 10 is similar to Claim 9 and similarly adequately defines the invention over the prior art.

### Conclusions of Law

1. This court has jurisdiction of this action, including the parties and the subject matter.

■ 2. Since the most pertinent prior art was considered by the Patent Office, the usual presumption of validity attaches to the Osius patent.

3. Osius Patent No. 2,109,501 was validly issued, and Claims 3, 9, and 10 of this patent were valid until their expiration on March 1, 1955.

4. Defendant's construction infringes Claim 3 of the Osius patent.

5. The overlapping circle limitation in Claims 9 and 10 is not essential to their patentability and they are entitled to a broad range of equivalents.

6. The defendant's "Mixablend" does not have the overlapping circles but the whirling materials therein act and do identically the same thing to accomplish the same result; hence the "Mixablend" infringes Osius claims 9 and 10 too.

### Discussion

This is an action for infringement by defendant, through manufacture and sale of its Universal Mixablend, of claims 3, 9 and 10 of the Osius patent #2,109,501, issued March 1, 1938, now owned by plaintiff, manufacturer of the Waring Blendor. Claims 3, 9 and 10 are as follows:

3. In a drink mixer a receptacle having inner side walls comprising a small number of smoothly arcuate substantially semi-circular edge-connected upright lobes a rotor having disintegrating blades movable in close proximity to the lower portion of said walls and means for revolving said blades about the axis of said receptacle in a direction such as to produce an upwardly and outwardly spiralling movement of the contents of the container, whereby the action of said lobes on the contents produces an exaggerated vortex having its apex in close proximity to said cutting blades.

9. In a drink mixer, a receptacle having therein a liquid confining space bounded by an annular series of smoothly arcuate lobes, the lobes being each defined in all horizontal planes by arcs of overlapping circles which are symmetrically arranged around a central axis and each of which circles passes closely adjacent such axis, a disintegrating and fluid propelling rotor disposed within the lower portion of said receptacle at the lower end of said space and rotatable about said axis, and means extending through the bottom of the receptacle whereby said rotor may be connected with a driving motor.

10. In a drink mixer, a receptacle having therein a liquid con-fining space bounded by an annular series of smoothly arcuate lobes, the lobes being each defined in all horizontal planes by arcs of overlapping circles which are symmetrically arranged around a central axis and each of which circles passes closely adjacent such axis, and a disintegrating and fluid propelling rotor disposed within the lower portion of said receptacle at the lower end of said space and rotatable about said axis, said rotor comprising a pair of horizontal blades operating in close proximity to the base of the receptacle and a pair of upwardly and outwardly inclining blades both said pairs of blades having cutting edges.

Both devices are used in the blending of materials, principally foods, in receptacles with removable covers at the top, having each a pair of high speed blades in and near the bottom of the receptacle, driven through a shaft by a motor contained in a base, from which the receptacle is detachable. Each has means for positioning the receptacle on the base so that it will not turn relative to the base. Each has a lobular receptacle, the accused device differing from Waring's device and from the patent in that there are flat spaces between the curved portions of the edges of the receptacle in the accused device. The upper blade of each device differs from that in the patent drawings in that one end of the blade is inclined upward, the other downward, while in the patent both are inclined upward.

The use of high speed blades so positioned, with the wall of the container so shaped as to form a small number of lobes, approximately four as in the two devices of plaintiff and defendant, results in separate spirally turning columns of the materials to be blended moving up the walls and down around a deep central vortex, each column mixing along its limits with the adjacent columns, and with the air of the central vortex. The fast action of the blades finely chops and makes possible rapid liquefaction of pulpy or other solid food and similar

materials in mixture with liquids, enabling rapid blending of the ingredients into a new homogeneous blend.

This has made possible substantial progress in the development of new food blends and mixes impossible with the old style mixers and has also found substantial industrial applications.

Essentially, it is the high speed blades at the bottom of the receptacle, to cut finely and throw the mixture outward and downward, with sufficient force to cause it to flow up the walls after striking the bottom, and the multiple lobes forming the edge-interacting spirals of material up the sides and down into the central vortex, which give the desired blending action. Defendant's device does not read literally on claim 3 of the patent because the lobes are not edge-connected nor on claims 9 or 10 because the circles defining the arcs forming the lobes do not overlap. The columns or spirals of material do, however, give the same result. The container· is not new. The design patent of Osius and the lobed or ribbed containers of the earlier art, such as Wilton and Miller, if used with the Waring (Osius) blades, at high speeds may well give the same result. The use of the blades to form a vortex in mixing is not new in view of Warrick. The combination, however, is new and highly useful in providing rapid blending. Sales of the Waring Blendor have been substantial, to date in excess of 1¼ million units.

The patent is valid and if so infringed unless Waring is barred by file wrapper estoppel, by having abandoned devices not actually edge-connected, or not having overlapping circles defining the arcs forming the lobes. Defendant has failed to point out particular language upon which it can properly base its claims of plaintiff's abandoning the elements of the presently asserted equivalence.

The prior art patents cited show a number of receptacles which resemble those in suit in the lack of uninterrupted smooth surface. They are, however, designed as churns or mixers, and, lacking the high speed blades, do not produce the motion resulting in the multiple column rising, mixing, aerating action achieved through the multiple rising columns and exaggerated vortex on the descent achieved by Osius.

The amendment of the claims in view of the rejection based on Crofford does not aid defendant, for what was retained was the smoothly arcuate design of the segments of the receptacle wall as distinguished from any type of baffling. Defendant's construction is still smoothly arcuate in sections and obtains the same result even though the arcuate sections are connected by flats.

The claims in suit are valid and infringed.

Form of decree may be submitted by plaintiff on notice.